UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

GOVERNMENT PERSONNEL MUTUAL LIFE INSURANCE COMPANY,

Plaintiff,

v.

DANIEL J. MALARKEY, individually and as Executor of the Estate of Roy L. Hughes, Jr., and JUDITH S. BESSOFF, an individual,

Defendants.

Case No. 1:26-cv-00007-DKG

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Plaintiff Government Personnel Mutual Life Insurance Company (GPM) brings this interpleader action against Defendants Daniel Malarkey, as executor of the estate of Roy L. Hughes, Jr. (the Estate), and Judith Bessoff (Bessoff) to resolve Defendants' competing claims to the death benefit of decedent Roy L. Hughes, Jr.'s (Hughes) life insurance policy (the Policy). (Dkt. 1).

Pending before the Court are the Estate's motion for summary judgment and motion to extend alternative dispute resolution deadlines (Dkt. 25, 47), and GPM's motion for an award of fees. (Dkt. 38, 42). For the reasons stated herein, the Court will

GRANT the Estate's motion for summary judgment, DENY its motion to extend alternative dispute resolution deadlines as moot, and DENY WITHOUT PREJUDICE GPM's motion for an award of fees.

**FACTUAL AND PROCEDURAL BACKGROUND**

Hughes, then an unmarried service member in the U.S. Navy residing in Virginia, applied for a GPM life insurance policy in the initial specified amount of $10,000.00, effective November 1, 1963. (Dkt. 7, Ex. 1; Policy No. 180860). Hughes listed his mother and father as beneficiaries to the death benefit proceeds of the Policy in his application. (Dkt. 7, Ex. 1). The application to the Policy provided that in making the beneficiary designation, the applicant's "[r]ight is reserved to revoke and change any beneficiary not designated irrevocable." (Dkt. 7, Ex. 1).

On February 10, 1974, Hughes and Bessoff married. (Dkt. 7, Ex. 3; Dkt. 31, Ex. 1). Two days later, on February 12, 1974, Hughes executed a change of beneficiary (Change Form) to the Policy, adding Bessoff as his primary beneficiary to the Policy and moving his parents to secondary beneficiaries. (Dkt. 7, Ex. 2). On the Change Form, Hughes listed his address as Cambridge, Massachusetts. (Dkt. 7, Ex. 2). The Change Form reiterated the rights reserved to the insured to change his beneficiaries as previously stated in the Policy application: "[r]ight is reserved to revoke and change any beneficiary not designated irrevocable." (Dkt. 7, Ex. 2).

After nine years of marriage, Hughes and Bessoff divorced in 1983 in Massachusetts. (Dkt. 7, Ex. 3). Hughes died in Washington state in 2022. (Dkt. 25, Ex. 1). Bessoff submitted a claim for the proceeds of Hughes' life insurance policy in April

2025. (Dkt. 7, Ex. 4). The Estate submitted a competing claim for the same proceeds in June 2025. (Dkt. 7, Ex. 5).

On January 8, 2026, GPM filed a complaint for interpleader against the Estate and Bessoff to resolve the competing claims pursuant to Fed. R. Civ. P. 22(a)(1) and 28 U.S.C. § 1335. (Dkt. 1). The Court granted GPM leave to deposit proceeds of the Policy in the amount of $39,257.94, plus $8.96 for each day from August 4, 2026, to the date of deposit, but denied GPM's request to be dismissed as a party to the case. (Dkt. 45).

The Estate filed the pending motion for summary judgment before the Court on May 21, 2026, followed by a motion to vacate or extend the alternative dispute resolution (ADR) deadline in October 2026. (Dkt. 25, 47). Bessoff filed responses to each but has made no cross-motion of her own for summary judgment. (Dkt. 31, 49).

## STANDARD OF LAW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact" entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a). At summary judgment, the role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial". *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (cleaned up).

To succeed on a motion for summary judgment, the moving party must either "produce evidence negating an essential element of the nonmoving party's claim or defense," or "show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden at trial." *Nissan Fire & Marine Ins. Co.,*

*Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

To defeat a motion for summary judgment, the respondent must present evidence upon which a reasonable juror, drawing all inferences in favor of the non-moving party, could return a verdict in his or her favor. *Zetwick*, 850 F.3d at 441. This evidence requires more than unsworn affidavits or the pleadings; the respondent must set forth specific facts, supported by evidence, with "reasonable particularity" to avoid summary judgment. *Zetwick*, 850 F.3d at 441. The court views all facts in favor of the non-moving party at summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## ANALYSIS

### I. Motion for Summary Judgment

GPM filed this action as a federal interpleader suit under 28 U.S.C. 1335. (Dkt. 1). The typical interpleader action proceeds in two stages. *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012); Wright, Miller, & Kane, 7 FEDERAL PRACTICE AND PROCEDURE § 1714 (3d ed.). In the first stage, the court decides whether the requirements for interpleader have been met and whether to discharge the stakeholder from further liability to the claimants. Wright, Miller & Kane, supra, § 1714. In the second stage, the court adjudicates the respective rights of the claimants to the stake. Wright, Miller & Kane, supra, § 1714.

Here, at the first stage, the Court determined that the requirements for interpleader had been met and allowed GPM to deposit proceeds with the Court registry but denied GPM's discharge from the action. (Dkt. 45). Accordingly, the Court next turns to the second stage of interpleader: adjudicating the respective rights of the claimants to the

Policy. On this motion, the Estate argues that it is entitled to death benefit proceeds from the Policy because the Policy is controlled by state revocation-upon-divorce statutes. (Dkt. 25). Bessoff argues that the Policy is controlled by the Employee Retirement Income Security Act (ERISA), thereby entitling her to death benefits as the named beneficiary despite her divorce from the decedent. (Dkt. 31).

**A. Choice of Law**

In federal interpleader actions properly brought under 28 U.S.C. § 1335, federal courts sitting in diversity apply the choice-of-law rules of the forum state to determine which state's substantive law controls. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Idaho law generally applies the most significant relationship test as set forth in the Restatement (Second) of Conflict of Laws to determine the law governing a contract. *Carroll v. MBNA America Bank*, 220 P.3d 1080, 1084 (2009) (citations omitted); RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971).

The most significant relationship test looks first to various factual contacts between the transaction or parties and the interested states, including (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; and (4) the location of the subject matter of the contract; (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Seubert Excavators, Inc. v. Anderson Logging Co.,* 889 P.2d 82, 85-86 (Idaho 1995). These contacts are then evaluated in light of certain broad policy concerns, including: the need of the interstate and international systems; the relevant policies of the forum; the relevant

policies of other interested states and the relative interests of those states in the determination of the particular issue; the protection of justified expectations; the basic policies underlying the particular field of law; the certainty, predictability, and uniformity of the result; and the ease in the determination and application of the law to be applied. *Seubert*, 889 P.2d at 88, n. 1.

Here, the Court finds there is no choice of law provision in the Policy that would otherwise govern. (Dkt. 7, Ex. 1; Dkt. 43, Ex. 2); *Stimpson v. Midland Credit Management, Inc.*, 347 F. Supp. 3d 538, 546 (D. Idaho 2018), *aff'd*, 944 F.3d 1190 (9th Cir. 2019). Turning to the Restatements' most significant relationship test, the Court finds the record ambiguous as to the place of negotiation and contracting of the Policy. The Policy application was signed by both Hughes and the insurance agent in Newport, Rhode Island, while listing Hughes's residence as Charlottesville, Virginia. (Dkt. 7, Ex. 1). GPM further alleges that the Policy was issued in Virginia. (Dkt. 42, p. 2).

Nevertheless, the record is clear that Massachusetts holds the most significant relationship to the action. In 1974, Hughes executed a Change of Beneficiary form in Massachusetts, adding Bessoff to the Policy as his new spouse. (Dkt. 7, Ex. 2; Dkt. 31, Ex. 1). Massachusetts was also the state in which the couple divorced in 1983, nine years later. (Dkt. 7, Ex. 3). The Court therefore finds that the factual contacts between the parties and interested states favor Massachusetts. The policy analysis also favors Massachusetts, as the Massachusetts revocation-upon-divorce statute mirrors Idaho's, as the forum state, and Washington's, as the state where the decedent was domiciled at his death. All three states relied on the Uniform Probate Code to model their revocation-

upon-divorce statutes, ensuring the uniformity of the result and the ease in the determination and the application of the law to be applied. Compare IDAHO CODE § 15-2-804(b); WASH. REV. CODE § 11.07.010; MASS. GEN. LAWS ch. 190B, § 2-804(b).

**B. Massachusetts' Revocation Upon Divorce Statute**

Massachusetts' revocation-upon-divorce statute provides that "the divorce or annulment of a marriage revokes any revocable disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument." MASS. GEN. LAWS ch. 190B, § 2-804(b). The statute allows exceptions to the rule if so provided by "the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment." MASS. GEN. LAWS ch. 190B, § 2-804(b). Section 2-804(b) is retroactive, revoking an ex-spouse's beneficiary designation even if such designation predated enactment of the statute in 2012. *American Family Life Assurance Co. v. Parker,* 178 N.E.3d 859, 866 (Mass. 2022).

Here, the Court finds that the Policy's beneficiary designation was indeed revocable by its express terms, as Hughes retained the ability to change its beneficiaries before, during, and after his marriage to Bessoff by the express language in both the Policy and the Change Form. (Dkt. 7, Ex. 1 and Ex. 2). Hughes never designated Bessoff as an irrevocable beneficiary as permitted by the Policy and the Change Form. (Dkt. 7, Ex. 1 and Ex. 2). Section 2-804(b) therefore applies, and Bessoff's status as a named beneficiary in the Policy was retroactively revoked by virtue of the divorce between Hughes and Bessoff. (Dkt. 7, Ex. 3).

Further, Bessoff has not provided evidence that her designation as beneficiary falls under one of the three revocation-upon-divorce exceptions provided by Section 2-804(b). The record does not show evidence of the express terms of a governing instrument, a court order, or a contract made between the couple that would otherwise provide for a division of marital assets preserving Bessoff's rights to the Policy's death proceeds. Indeed, the divorce agreement between Hughes and Bessoff expressly provides that:

> [t]he Husband and Wife hereby fully release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, which either of them has ever had, now has, or may hereafter have against the other…including, but not limited to, claims against each other's property, it being the intention of the parties that henceforth there shall exist between them only such rights and obligations as are specifically provided for in this Agreement and in any judgments entered by a court of competent jurisdiction. (Dkt. 7, Ex. 3, p. 3).

The divorce agreement between the couple includes no specific provisions for Bessoff's continued designation as a beneficiary of the Policy, despite including specific provisions for distribution of real property, personal property, support and alimony, tax provisions, and medical insurance. (Dkt. 7, Ex. 3, "Exhibits A-E").

As such, the Court finds that Bessoff's beneficiary designation was automatically revoked upon her divorce from Hughes pursuant to Section 2-804(b). Because Hughes's parents, as contingent beneficiaries, pre-deceased him, the Estate is the proper beneficiary of the Policy as a matter of law. (Dkt. 7, Ex. 1 and 2; Dkt. 25, ¶ 5). Accordingly, the Court will grant the Estate's motion for summary judgment.

### C. ERISA

Bessoff argues that ERISA governs the Policy, thereby preempting Massachusetts

state law and entitling her to the Policy's death benefit proceeds as the Policy's named beneficiary despite her divorce from Hughes. (Dkt. 31). The Court disagrees.

Determining the existence of an ERISA plan is to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir. 1987) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (outlining criteria for establishing an ERISA plan)). An ERISA plan must be "established or maintained by an employer or by an employee organization, or by both." 29 U.S.C. § 1003(a). *Credit Managers Ass'n*, 809 F.2d at 625.

However, even certain employee welfare benefit plans that would normally fall under ERISA may be excluded if an employer meets all four of the following safe harbor provisions as outlined by the U.S. Department of Labor: (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction. 29 C.F.R. § 2510.3-1(j); *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988). And, while ERISA is broadly applicable, it does not apply to several types of specific benefits, including insurance contract plans funded exclusively by the purchase of individual insurance contracts. 29 U.S.C. §1081(a)(2), (b).

Here, Bessoff has produced no evidence that the Policy was an employer benefit plan. While Bessoff states that Hughes held a "life insurance policy from the federal government," there is no evidence in the record to show that the Policy in question was established or maintained by Hughes's employer or by an employee organization. (Dkt. 31-1; Dkt. 7, Ex. 1). Instead, the Policy appears to be a voluntary private policy, applied and paid for by Hughes as an individual. (Dkt. 7, Ex. 1). There is no reference to group plan membership, a plan administrator, or other references or ties to an employer or employee organization in the Policy application or the representative Policy itself. (Dkt. 7, Ex. 1; Dkt. 43, Ex. 2). While Hughes was a service member in the U.S. Navy at the time of his application for the Policy, and while his military rank and address are listed on the form, this is not enough to infer that the military, as his employer, sponsored the plan such to either qualify it outright under ERISA or to otherwise bypass the ERISA safe harbor provisions. (Dkt. 7, Ex. 1; Dkt. 43, Ex. 2).

For these reasons, the Court finds Bessoff has not set forth specific facts, supported by evidence with reasonable particularity, to show that the Policy is an ERISA policy. Nor has Bessoff identified evidence giving rise to a genuine issue of material fact that the Estate is not the beneficiary of the Policy under the application of Massachusetts law. As such, the Court finds that Bessoff has failed to meet her burden at summary judgment.

## II. Attorney Fees

In its motion to deposit interpleaded funds, GPM sought an award of fees pursuant to Federal Rules of Civil Procedure 22 and 67, and 28 U.S.C. § 1335. (Dkt. 38, 42). The

Estate opposed this motion. (Dkt. 41). Bessoff did not oppose or support the motion. (Dkt. 44). In its Order on GPM's motion to deposit interpleaded funds, the Court declined to rule on GPM's motion for fees. (Dkt. 45). The Court now takes up GPM's motion.

Federal courts generally award a disinterested stakeholder the fees and costs associated with bringing an interpleader action and depositing the funds with the court. *Trs. Of Dirs. Guild of Am. Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000). This generality has some limitations: namely, that the disinterested stakeholder must have acted in good faith and not been dilatory, and that the costs and fees must be reasonable. *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982); *Barnett v. Minnesota Life Ins. Co.,* No. 1:21-cv-00018-DCN, 2022 WL 742717, at *6 (D. Idaho Mar. 11, 2022). In addition, expenses beyond preparing the complaint, obtaining service of process, and preparing an order discharging the stakeholder from liability must be justified as reasonable and necessary. *Barnett*, 2022 WL 742717 at *7; *Reyes-Wilson ex rel. Wilson v. Metropolitan Life Ins. Co. of America v. Cooper*, No. 1:10-CV-288-BLW, 2010 WL 5391277, at *3 (D. Idaho Dec. 17, 2010).

Here, GPM requests $6,000.00 in attorney fees, noting that it has accrued over three times this amount. (Dkt. 42). GPM claims that it has accrued fees largely attributable to responding to the Estate's "unwarranted and often inaccurate motions and correspondence". (Dkt. 42). Having carefully reviewed the record and being familiar with the litigation, the Court finds that GPM has not justified its fees under *Barnett* as reasonable and necessary, beyond those incurred in preparing the complaint, obtaining service of process, and preparing an order discharging GPM from liability and dismissing

it from the action.

In addition, under Local Rule 54.2(b), motions for attorney fees must provide an affidavit that includes "(1) date(s), (2) services rendered, (3) hourly rate, (4) hours expended, (5) a statement of attorney fee contract with the client, and (6) information, where appropriate, as to other factors which might assist the Court in determining the dollar amount of fee to be allowed." Dist. Idaho Loc. Civ. R. 54.2(b). GPM has not done so here.

Because GPM has not established that an award of fees is appropriate and has not produced sufficient information for the Court to determine the appropriate amount of any award of fees, the Court denies GPM's motion for fees without prejudice. (Dkt. 38). If appropriate, GPM may renew its motion for fees consistent with this Order and pursuant to Local Rule 54.2(b), as stated below. As any award of attorney fees requested would be paid out of the interpleaded fund held by the Court registry, disbursement of funds to the Estate will be made after any motion for attorney fees is resolved or the time for such filing has passed.

## ORDER

Accordingly, for the reasons stated herein, **IT IS HEREBY ORDERED THAT:**

1. The Estate's Motion for Summary Judgment (Dkt. 25) is **GRANTED.**
2. The Estate's Motion to Extend ADR Deadlines (Dkt. 47) is **MOOT.**
3. GPM's Motion for Fees (Dkt. 38) is **DENIED** without prejudice. GPM may refile on or before December 21, 2026.

4. Disbursement of funds held by the Court Registry Investment System to the Estate will be made in a separate order after resolution of any renewed motion for fees.

DATED: November 19, 2026

Honorable Debora K. Grasham
United States Magistrate Judge